*Orphans' Court, Dauphin County, December 18th.* 1857.

IN THE MATTER OF GALLOWAY'S ESTATE.

An appraisement of the real estate of decedent in order to set apart three hundred dollars' worth for the use of the widow will be set aside when the value fixed was evidently erroneous. The appraisers should not take into consideration that the property was for the use of the widow, that she only had a life estate in it, or that she had helped to pay for it.

BY THE COURT.—The appraisement in this case was regularly made, presented to the court at May Term, 1857, approved and ordered to be filed. At August Term of the same year, an application was made to set aside the confirmation and appraisement, on the ground that the property was greatly undervalued. This application appears to have been made at the earliest day practicable, as those interested rarely, if ever, have notice of the presentation of appraisements, until they have been confirmed. The evidence presented to the court satisfies us that the house and lot appraised at $300, and set apart for the widow pursuant to the act of Assembly, is worth at least double that sum or more. The witnesses vary in their valuation from $400 to $1000. The only witness who fixes the value so low as $400, is one of the appraisers, who testifies that he considered it worth $400 in cash when he appraised it, but should not be appraised to a widow at over $300. All of the other witnesses fix the value much higher, and all, including the appraiser, agree that it would rent for $50 per annum. The appraiser states that the widow had paid a considerable portion of the money expended in building the house. which was mentioned

amongst the appraisers, and doubtless taken into consideration, else it is impossible to understand how the value was fixed as reported by them. This kind of undefined equity must have no place in fixing a value on the property of a decedent. If appraised and set apart as his property, it must be treated as absolutely his. The appraiser also seems to make a distinction between appraising property for a *widow*, and fixing a cash value on it for other purposes; and the counsel of the widow argues that such distinction is correct, because she does not get the fee simple. That is an error; she can sell the fee simple, and receive the money. It must be borne in mind that in very many cases the property set apart, whether real or personal, is taken from creditors, and if the fee does not pass to the widow, it does to the widow and heirs, and the creditors are deprived of its value. The law makes no distinction as to the method of appraising solvent or insolvent estates, nor does it require one valuation to be fixed where a life estate is given to a widow, and a different one where the fee simple is given the children of the deceased. In each and every case—and we may say in all cases under the acts reserving three hundred dollars' worth of property to debtors, or the widow and children of decedents—the goods or lands must be appraised at their actual *cash value*, without the slightest regard to the person receiving them; and whenever it clearly appears to the court that a different valuation has been fixed, it is our bounden duty to set it aside. It behooves the court to closely watch the appraisements, especially when the party in interest has the right to select the appraisers. The legislature, very unwisely, as we think, authorized the administrator to appoint appraisers. Yet if they had adverted for a moment to the other laws of the State, they must have known that the widow is the primary person to administer, and entitled to receive the three hundred dollars' worth of property when valued and set apart. Where there is no widow, or she declines administering, the children, in their orders of seniority, are entitled; and in many cases they are the parties to take in the first place, and always after the widow's interest has ceased. The power to select appraisers we think could have been more safely conferred on the register of wills, or, if that were considered too troublesome, on some justice of the peace in the proper township, not of kin to the parties in interest. This is unlike the ordinary appraisement of a decedent's goods, as their value has afterwards to be fixed by a public vendue. In the cases under consideration, they are taken absolutely. These observations are not made with a view to the present appraisers, who are men of good character; but, as we suppose from the evidence of one examined, have been influenced in their action by erroneous principles. The appraisement must be set aside, and a new one made.